**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RONNIE ALLEN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1108** |
| **N. BURL CAIN, WARDEN** | **SECTION "A"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.   State Factual and Procedural Background**

The petitioner, Ronnie Allen ("Allen"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On May 11, 2007, Allen and three co-defendants, George Brown, Lee Michael Brown, and Charles Dexter Martin, were indicted by a Grand Jury in

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

Tangipahoa Parish for the second degree murder of Clarence Nicholes.[3] He entered a plea of not guilty to the charge on May 24, 2007.[4]

The record reflects that, on March 10, 2007, Alfred Pea was fishing in the Manchac Canal in Tangipahoa Parish when he discovered the lifeless body of Clarence Nicholes floating in the water.[5] Nicholes's body and head had numerous abrasions. His vehicle and wallet subsequently were recovered from an area nearby. In response to information received during the investigation from an informant, whose name was not disclosed, Allen and the three co-defendants were arrested and charged with the murder.

In a taped statement to the police after his arrest and waiver of his rights, Allen confessed to his participation in the murder. Allen provided a detailed chronological account of how he and his friends beat the victim and disposed of the body. Allen stated that he and the co-defendants approached Nicholes, because they thought he was attempting to break into a residence. However, the evidence would later establish that Nicholes knew the owner of the home well, was in contact with the owner several times a week, and had a key to the residence. According to Allen's statement, all four men began punching and beating Nicholes causing him to eventually fall onto the ground. The men placed him inside of the trunk of his vehicle and drove him to the Manchac Canal. When they opened the trunk, Allen beat Nicholes on the head with a gun. The four men eventually dumped Nicholes's body into the canal where it was later found by Pea.

---

[3] St. Rec. Vol. 2 of 6, Indictment, 5/11/07.

[4] St. Rec. Vol. 2 of 6, Minute Entry, 5/24/07.

[5] The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Allen*, 9 So.3d 354 (La. App. 1st Cir. 2009) (Table); *State v. Allen*, No. 2008-KA-2271, 2009 WL 1272562, at *1 (La. App. 1st Cir. May 8, 2009); St. Rec. Vol. 2 of 6, 1st Cir. Opinion, 2008-KA-2271, pp. 2-3, 5/8/09.

At a hearing held on November 27, 2007, the Trial Court denied Allen's motions to suppress his statement and other evidence finding that his arrest was legal and his statement was voluntarily made after waiver of his rights.[6] Allen's counsel also sought unsuccessful supervisory review of that ruling in the Louisiana First Circuit.[7]

Allen was tried before a jury on July 15 and 16, 2008, and he was found guilty as charged.[8] On August 8, 2008, the Trial Court heard and denied Allen's motions for arrest of judgment, for post-verdict judgment of acquittal, and for new trial.[9] The Trial Court sentenced Allen on August 11, 2008, to life in prison without benefit of parole, probation, or suspension of sentence.[10] The Court also denied Allen's motion to reconsider the sentence.[11]

On direct appeal, Allen's counsel raised three errors:[12] (1) the Trial Court erred in denying Allen's challenges for cause; (2) the Trial Court erred in failing to suppress Allen's statement; and (3) the Trial Court erred in allowing inflammatory and cumulative photographs into evidence. On

---

[6]St. Rec. Vol. 2 of 6, Minute Entry, 11/27/07; St. Rec. Vol. 3 of 6, Motion to Suppress Statement, 8/20/07; Supplemental Motion to Suppress, 12/21/07; St. Rec. Vol. 4 of 6, Motion Hearing Transcript, 11/27/07.

[7]St. Rec. Vol. 1 of 6, 1st Cir. Writ Application, 2008-KW-0204, 1/31/08; 1st Cir. Order, 2008-KW-0204, 3/24/08; 1st Cir. Writ Application, 2008-KW-0694, 4/9/08; 1st Cir. Order, 2008-KW-0694, 5/12/08.

[8]St. Rec. Vol. 2 of 6, Trial Minutes, 7/15/08; Trial Minutes, 7/16/08; St. Rec. Vol. 3 of 6, Jury Verdict, 7/16/08; St. Rec. Vol. 4 of 6, Trial Transcript, 7/15/08; Trial Transcript, 7/16/08; St. Rec. Vol. 4 of 6, Trial Transcript (continued), 7/16/08.

[9]St. Rec. Vol. 2 of 6, Motion Hearing Minutes, 8/5/08; St. Rec. Vol. 5 of 6, Motion Hearing Transcript, 8/5/08; St. Rec. Vol. 3 of 6, Motion for New Trial, 7/18/08; Motion for Post-Verdict Judgment of Acquittal, 7/18/08; Motion in Arrest of Judgment, 7/18/08.

[10]St. Rec. Vol. 2 of 6, Sentencing Minutes, 8/11/08; St. Rec. Vol. 5 of 6, Sentencing Transcript, 8/11/08.

[11]*Id.*; St. Rec. Vol. 3 of 6, Motion to Reconsider Sentence, 8/11/08; Trial Court Order, 8/11/08.

[12]St. Rec. Vol. 2 pf 6, Appeal Brief, 08-KA-2271, p. 6, 12/16/08.

May 8, 2009, the Louisiana First Circuit Court of Appeal affirmed Allen's conviction and sentence finding no merit in the claims.[13]

On June 4, 2009, Allen submitted *pro se* a writ application to the Louisiana Supreme Court which was denied by the Court without stated reasons on February 12, 2010.[14] Allen's conviction became final 90 days later, on May 13, 2010, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S.Ct. Rule 13(1).

On September 24, 2010, Allen submitted an application for post-conviction relief to the Trial Court in which he raised two grounds for relief:[15] (1) trial counsel was ineffective in failing to argue the motion to suppress on grounds of an illegal arrest which would have led to suppression of the statements and the other evidence; and (2) he was denied effective assistance of appellate counsel for failure to fully brief the assignments of error on appeal. Allen also asked that he be granted an out-of-time appeal, discovery, and an evidentiary hearing. The Trial Court denied the application and the request for a new appeal finding his claims to have no merit as a matter of law.

---

[13]*State v. Allen*, 2009 WL 1272562, at *1 (La. App. 1 Cir. May 8, 2009); St. Rec. Vol. 2 of 6, 1st Cir. Opinion, 2008-KA-2271, 5/8/09.

[14]*State v. Allen*, 27 So.3d 844, 844 (La. 2010); St. Rec. Vol. 2 of 6, La. S.Ct. Order, 2009-KO-1440, 2/12/10; La. S.Ct. Letter, 2009-KO-1440, 7/1/09 (showing postal meter of June 4, 2009). The State failed in its obligation to provide a certified copy of the Louisiana Supreme Court records, including this writ application. The State's failing does not effect the Court's ability to address Allen's claims.

[15]St. Rec. Vol. 6 of 6, Uniform Application for Post-Conviction Relief, pp. 4-5, 11/8/10 (dated 9/24/10).

Allen sought review of this order in the Louisiana First Circuit, and the Court denied his application without stated reasons on April 13, 2011.[16] The Louisiana Supreme Court denied Allen's related writ application without state reasons on March 23, 2012.[17]

## II.     Federal Petition

On May 2, 2012, the clerk of this Court filed Allen's federal petition for habeas corpus relief in which he raised two grounds for relief:[18] (1) he received ineffective assistance of counsel during the motion to suppress for failure to argue an illegal arrest and to obtain suppression of the statements; and (2) he received ineffective assistance of appellate counsel for failure to raise all possible claims on appeal and he is entitled to an out-of-time appeal. Allen also requests that he be granted discovery, and an evidentiary hearing.

The State filed an answer and memorandum in opposition to Allen's petition conceding its timely filing and exhaustion.[19] The State argued that Allen failed to point to a ruling contrary to federal law, there was no error in the ruling made on his motion to suppress, and counsel's actions were not prejudicial.

---

[16]St. Rec. Vol. 2 of 6, 2010-KW-2226, 4/13/11. Again, the State has failed to provide the Court with a certified copy of the writ application as part of the state court records.

[17]*State ex rel. Allen v. State*, 84 So.3d 565, 565 (La. 2012). The State wholly failed to produce any certified portion of the Louisiana Supreme Court's records, and although indicated that it did so, no copy of this ruling was included from their files. *See* St. Rec. Vol. 1 of 6, July 16, 2012, Letter.

[18]Rec. Doc. No. 1, pp. 6, 8, 30, 51.

[19]Rec. Doc. No. 9.

**III.    General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[20] applies to this petition, which is deemed filed in this Court no later than April 30, 2012.[21] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 & n.23 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record shows that Allen timely filed his federal petition and has exhausted state court remedies without a procedural default. Before addressing Allen's claims, the Court first notes that the record is sufficient to resolve Allen's claims and there is no reason to require further discovery in this case. In addition, as previously noted, Allen is not entitled to an evidentiary hearing in this proceeding raising meritless claims.[22]

---

[20]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Allen's federal habeas petition on May 2, 2012, when he was granted pauper status. Allen signed the form petition on April 30, 2012. This is the earliest date in the record on which he could have delivered the pleadings to prison officials for mailing.

[22]*See* footnote 1, *supra*.

## IV. Standards of Review on the Merits

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2)

extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *Penry*. The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V. **Ineffective Assistance of Trial Counsel (Claim No. One)**

Allen alleges that his trial counsel provided ineffective assistance because his counsel did not adequately argue the illegality of the arrest which would have been grounds to suppress his inculpatory statements to police. Under a broad reading, Allen argues that his second appointed attorney should have re-urged the motion to suppress argued by his first appointed attorney to pursue

a different basis for the motion through argument regarding the illegality of his arrest. In support of his claim, Allen revisits the testimony from the hearing on the motion to suppress and suggests that, based on that testimony, his counsel should have pursued relief based on the illegality of the arrest rather than the theory that he was not advised that he was in custody.

Under the best possible reading of the opposition response, the State appears to argue that the motion to suppress was properly granted, therefore counsel's performance did not prejudice Allen.

Allen raised this claim in his application for post-conviction relief. The Trial Court denied relief, finding that all of the relevant issues had been addressed in prior proceedings and Allen's counsel had not performed appropriately. This was the last reasoned opinion on the issue, because the Louisiana Fifth Circuit and the Louisiana Supreme Court denied relief without comment. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-03 (1991) (when the last state court judgment does not indicate whether it is based on procedural default o r the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). The question is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S.

9

at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566

F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S.Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S.Ct. at 792.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross*, 694 F.2d at 1012).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S.Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts

must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

In this case, Allen's claim is premised on his counsel's failure to achieve success on the motion to suppress. He claims that counsel should have taken a different approach, focusing on the illegality of the arrest, in arguing or reurging the motion. Counsel's actions are not deficient, or prejudicial, simply because they are unsuccessful in their efforts to obtain relief from a court. *See Martinez v. Dretke*, 99 Fed. App'x. 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

Furthermore, although the motion to suppress was unsuccessful, the record demonstrates that both of Allen's attorneys proceeded in a professional and knowledgeable manner. Contrary to Allen's suggestion, in the motion and hearing counsel did specifically challenge whether Allen was in custody or under arrest or "free to go" and whether he was properly read his rights prior to making the statements to police.[23] As noted by the state trial court, whether counsel described it as "in custody" or as an illegal arrest would simply have been a matter of semantics.

The Trial Court, at the suppression hearing, determined that Allen and the co-defendants were placed in custody and read their *Miranda* warnings, which constituted being under arrest.[24] Based on the evidence, the Trial Court made a clear finding that probable cause existed for the arrest, thus finding Allen's arrest to be lawful.[25] It was reasonable for counsel not to further pursue

---

[23]St. Rec. Vol. 4 of 6, Motion Hearing Transcript, pp. 11-13, 11/27/07.

[24]*Id.*, p. 18.

[25]*Id.*, pp. 20-21.

the same question and/or to avoid filing a second motion to question the lawfulness of an arrest already found to be so by the Trial Court. The Court also emphasizes that counsel sought supervisory review of the denial of the motion to suppress in pretrial writ applications filed with the Louisiana First Circuit and the Louisiana Supreme Court, long before it was also raised on direct appeal.

In spite of counsel's efforts, the state courts found no reason to grant the motion to suppress his statements. Counsel's unsuccessful efforts on these issues does not equate to deficient or prejudicial performance. The state courts' denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.

## VI. <u>**Ineffective Assistance of Appellate Counsel (Claim No. Two)**</u>

Allen argues that his appellate counsel failed to present all possible claims to the appellate court. The proper standard for evaluating a claim that appellate counsel was ineffective in raising issues on direct appeal is that set forth in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). In applying this standard, the petitioner must establish that his appellate counsel unreasonably failed to discover and raise a nonfrivolous issue and show a reasonable probability that, but for his counsel's unreasonable failure to raise the issue, he would have prevailed on his appeal. *Smith*, 528 U.S. at 285.

Although he indicates in his brief that he would, Allen has not identified the claims he believes should have been raised by appellate counsel. It is well within reason for appellate counsel to use discernment and not raise every possible issue. Furthermore, the Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not raise every nonfrivolous claim; instead, counsel may legitimately select from among them in the exercise of

professional judgment to maximize the likelihood of success on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Thus, appellate counsel has the discretion to exclude even a non-frivolous issue if that issue was unlikely to prevail. *See Anderson v. Quarterman*, 204 Fed. App'x. 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal . . . lack merit. As such, failure to raise these issues did not prejudice Anderson."); *Penson v. Ohio*, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *Kossie v. Thaler*, 423 Fed. App'x. 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's premise that only when ignored claims are stronger than those raised will the presumption of effectiveness be overcome) (citing *Smith*, 528 U.S. at 288). Allen has not pointed to any merited issues that would have called for counsel to include them in the appeal.

In addition, to the extent Allen intended to argue that appellate counsel failed to properly raise and argue that his arrest was illegal which should have led to the suppression of the statements, the claim is factually incorrect for the same reasons set forth above. First, the record clearly shows that the issue of the probable cause for and the propriety of the arrest leading to the statements was presented to and addressed by the Louisiana First Circuit on direct appeal. Appellate counsel urged the Louisiana First Circuit to review the denial of the motion to suppress, including the probable cause finding, the circumstances surrounding his arrest, and the legality of the inculpatory statements. This is exactly what Allen suggests should have been done.

Allen has not shown a deficiency in or prejudice arising from his counsel's performance on direct appeal. Allen has failed to establish that the state courts' denial of relief on this issue was contrary to, or an unreasonable application of, Supreme Court law. He is not entitled to relief on this claim.

14

**VII.    Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Ronnie Allen's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[26]

New Orleans, Louisiana, this 6th day of November, 2012.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[26]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.